number 22-1733. And if counsel would be, would please focus on what is a substantial issue in this case and that being standing. You know, you can make your other arguments as well, but I want to be sure that you perhaps start with that threshold issue. So thank you. Counsel, we'll hear from you. If I could reserve five minutes for rebuttal. That would be granted. And thank you. It may please the court. My name is Lisa Blatt, and I represent the Disciplinary Board of the Supreme Court of Pennsylvania. Over three decades ago, attorney ethic rules started banning harassment discrimination, and nearly 100 such rules exist today from 40 states, the District of Columbia, three U.S. territories, judicial codes in 46 states, and in all federal courts. Yet the court below facially struck Pennsylvania's harassment discrimination rule on both First Amendment and vagueness grounds. This court should reverse for lack of standing or alternatively on the merits. When I look at all of the, and it was very helpful that you attached the various 8.4G type provisions in all of the states and territories that have enacted it, they're quite different. And the question here is why? I mean, I assume you probably, your firm probably wasn't even brought in until after the court's decision in the district court, or is that correct? That's correct. It is to deal with standing and not have someone have standing. It would appear that some of these provisions are significantly more protective than others. And then the question becomes, is Pennsylvania's as protective as, for example, Maine or New Hampshire? How do you respond to that? Well, in terms of, I'm not sure which direction. So 40 states ban it either through harassment discrimination. They all have slightly different definitions, standards as to intentionality. Pennsylvania, unlike 17 states, requires intentionality. The ABA's rule does not. 29 states don't have a pervasive or severe requirement, which the other side focuses on. We rely a lot on the 46 judicial canons and the rule that applies in this court as well that are much broader than Pennsylvania's rule. And those apply to lawyers either subject to the judge's control or proceedings before the court. So out of the hundred that we have, I would say there's a spectrum. Pennsylvania being quite, you know, generous towards attorney speech. What they rely on is the application outside client representation and a operation of law office. And we cite 20 states that go beyond client representation. And then 37 judicial canons go beyond the judge's official capacity and apply to any kind of manifestation of bias when they're in a supermarket. So again, there's just a massive amount of attorney regulation in this area that started in 1990. And the focus seems to center here on the CLEs. Yeah. The bench bar conferences, the attorney conferences. Yeah, that's correct. And I'm happy to just circle back to standing. But what's the policy behind those? Sure. I'll take the easy one first, just because the other side inexplicably concedes. I don't know why they're challenging it, that the rule applies with full force and effect to judicial conferences, but then says somehow bench and bar conferences are different. And a lawyer is a lawyer when he attends either your conference or a bench bar conference where you're present. And so it is completely a mystery how one could be unconstitutional and yet the other couldn't. As CLEs, I think that's also an easy case because there is no question that attorneys can be compelled to attend CLE classes or courses on how to behave ethically, including how not to harass and discriminate against people. And it would seem pretty logical that they can require attorneys to act ethically and including without harassing specific people or discriminating against people. CLEs are mandatory. And again, I hate to break the, I mean, I know you're going to ask them this, but CLEs are 0.04 of what lawyers do. And they brought a facial challenge. This rule was struck in its entirety when 99.4% of the rule is conceded to meet any standard of review. But CLEs, and I think the Fifth Circuit's McDonald case, the court just had a case on compelled speech at CLEs. And that case was quite extensive on how the First Amendment applies in attorney regulation. And I just think the same, I'm getting a facial expression that suggests. Plaintiff contends that his speech is chilled and gives examples as to complaints that were lodged either personally or maybe with other organizations. Tell us how the Farrell Declaration, which is non-binding, how that works and whether or not it provides the kind of protection that the plaintiff wants. So the two arguments on standing and the Farrell Declaration goes to the second. On the first, there's a requirement that he has to allege that there is an arguable violation. And he does not allege that his CLE presentations arguably violate the rule. He does not allege that he arguably wants to harass or discriminate against anyone. Just to be clear, counsel, we don't need to worry about the first complaint, right? Just the amended complaint? Correct. Okay. So, and on the second one, which goes to whether there's a credible threat of prosecution and an objective basis to be chilled, he doesn't have it for three reasons. The first of which is the Farrell Declaration that says your planned CLE speeches are fine. The second reason is the way the, if there are complaints, they do not, meritless and frivolous complaints do not lead to any enforcement action. The complaints are just dismissed. And the third, which I think is very compelling, is that we have a hundred, hundred such rules that have been around since 1990 and they cannot cite one, not one example of any attorney who's been disciplined under these rules for pure ideological or controversial speech. So, you have a 30-year track record and that's just not an objective basis to be chilled. Given the statement from the disciplinary board, should they change their mind at some point in the future, would some form of estoppel apply? Yeah, but I would just say due process. You have to have adequate notice before you're disciplined. And so, unless, you know, if there was a, you'd have to have some sort of notice. The ABA also has a formal opinion on the same subject, 493, and that says pretty in detail that, you know, expressions of ideology, even pretty extreme and controversial statements just don't count as harassment against a particular people, much less knowing. So, either you would have judicial estoppel or it would seem to me how could, in just due process, you have, he's been told this will not violate, this doesn't violate the rule. So, the fear of being chilled is objectively unreasonable? It's frivolous. Or frivolous. Yeah. I mean, I agree that there's cancel culture. People are going to complain. We've had that. We've had problems with people complaining for decades. But we've also had rules starting in 1990 and starting in 1790 with the Supreme Court on conduct yourself uprightly. And you don't see attorneys. The one example they gave of somebody who went crazy on social media after George Floyd died, that, first of all, rule doesn't apply to social media. But that person was disciplined under South Carolina's rule, which is bring the bar into disrepute. That is a very sweeping statement. So, I mean, you're very quite aware of attorney rules and judicial rules that are quite sweeping and have been. And they, you know, this gets a little bit into the vagueness. But the First Amendment and Burden II, we've all operated under the assumption that there's settled usage and a core on what constitutes inappropriate behavior by attorneys. But you mentioned the judicial rules. Certainly, they are strong proscriptions against harassment and discrimination in the judicial rules. Oh, yeah. But those apply to attorneys, too. But they are quite sweeping, including demeanings, you know, attempted humor, demeaning nicknames, facial body movements that could appear biased. And, again, no known cases of discipline under anything remotely like, I mean, I'm happy to talk about Citizens United and Mattel and quote from opinions here. And I don't think D.C. or Pennsylvania is going to disbar me or discipline me. But his statements of he wants to talk about due process rights of people accused of sexual misconduct. He wants to talk about Citizens United. He wants to. I don't know what else. But that's great. Those are not issues of the day. And ABA says that's fine. The Farrell Declaration says that's fine. And the rule on its face says it requires knowing harassment. And I just don't you know, I don't see how he doesn't even argue. That this is arguably harassment, so he just doesn't his only argument is that a listener might be offended, but the rule just doesn't turn on listener complaints or any kind of heckler's veto. I know that the rule for a point for G requires that the harassment be targeted at another individual. One of the amicus briefs points out statements such as Korematsu, quote, Korematsu versus United States was correctly decided that during times of war, the president should be able to exclude individuals based on their ethnicity. Wouldn't statements like this make an individual feel degraded based on their protected trait? I don't know, but I don't think the rule cares. I mean, that's the whole point is that, I mean, in the Supreme Court, I think in the 1957 Schwer case talked about, I mean, it's a due process case, but that guy was a communist. He was members in other subversive organizations, did all kinds of political agitating, was arrested. And the court said, you know, it has to be the bottom line. And the key here is it has to be related to fitness to practice law. And a view, even if you're racist, does not disbar you or disable you from the ability to practice law. And if it's not tied to fitness, the state can't discipline you. There's no constitutional authority to do so. I'm talking about targeting an individual. Oh, sorry, targeting. No, I think they interpret it to mean a specific person. So you might have some situation where I guess if the person's right in front of you and you go on and on and on and on and on and start making it to a harassing, abusive situation. But again, we've got 30 years of, I think there are more people who've commented on worse and more controversial cases than, I mean, there's lots of hot topics right now where we all have strong opinions. You're not allowed to discipline somebody for their opinions. It has to do with fitness to practice law. If I could go over from standing to to the merits, if I may. Assume for the moment that Mr. Greenberg has standing and I realize you contest that vigorously. You had a prior 8.4G in PA that was in 2019, Pennsylvania in 2019, and I guess went into effect in late 2020. And that talked about adopting other provisions and statutes like Title VII. That's correct. And those basically talked about pervasive and severe. But the new provision in 2021 doesn't have that in there. That's correct. Does that mean that pervasive and severe is you can be disciplined for something that's not pervasive and severe? Well, so again, just a little bit of irony here. Mr. Greenberg made fun of that and said that's vague. So it got taken out and now he's, you know, so he can't win. But on your point specifically, one of their amici does harp on this and gives these atrocious examples and says, here are all these horrible things that people have said that don't constitute severe and pervasive. And you don't want lawyers saying that, much less judges. But in terms of your judicial ethics and all 46 states, there is no severe or pervasive requirement, period. Now, that doesn't mean severe and pervasiveness is not relevant, both with the discipline and whether there's a violation. And the preamble to the rule says seriousness and repeated conduct are, you know, governing criteria. So and also the Snyder case is another Supreme Court case where the lawyer refused to apologize to the judge. The judge kept saying, you got to apologize, and the lawyer refused to. And the court's like, we're not going to discipline this guy. No, and the Supreme Court took that. So there's a common sense element to this. But, yeah, you don't want to put, they didn't want to adopt Title VII because this is not, this courtroom is not a workplace. And so there's just different rules that apply to me that don't apply to a supervisor in a factory. So if you're Mr. Greenberg and you're saying, wait a minute, the revised 8.4G doesn't necessarily have pervasive and severe included within it right now. It does include CLE, which is where I really want to spend most of my time and make most of my comments. And there's no carve out, as some other states have, for policy positions and religious positions. I'm really, I'm really worried that Mr. Farrell is not there and they're going to come after me. And, you know, God forbid I don't want to go out to Stanford and give a speech because they're really going to come after me. And so what do we do about that type of situation? Well, he put a facial challenge, so he's got a problem. Facial challenge, but also I think his complaint said made an as-applied challenge too, did it not? And that wasn't dealt with by the district court. I wasn't aware of that, but the court struck it in its entirety. But as to CLEs. The other side can clarify if I'm wrong. But 29 states, judicial codes, 46, and all federal codes do not have a severe pervasive requirement. So I don't understand the difference between a CLE talk and a lunchroom break at a deposition or a client negotiation or mediation conference at Starbucks. I'm having, I mean, I'm just having a hard time with something magical about a CLE where you're talking about ethics training and how to do wills and estates. But yet, if you're pitching for a client for a will and a state, all of a sudden it's okay and it satisfies strict scrutiny. And you can have viewpoint discrimination until the cows come home. But once you step into a CLE, it becomes the marketplace of ideas like a football field. It's a CLE. It's mandatory. And they're saying you can't put, you can't do differential treatment on discrimination and you can't harass people. Pardon my indignation, but it's not that much to ask, especially when federal courts have had this since 1992. States have had it since 1990. Supreme Court's had it since 1790. You know, the concern is somebody's going to make a comment that's similar to what Mr. Shapiro said. I don't believe this particular person is as qualified as another person for the Supreme Court. And the place goes nuts. Yeah, and so the example in the ABA one is pretty bad, too. It's saying if you can't get in because of your qualifications, go to a lesser school. That's not in any way subject to discipline. So Ilya Shapiro, who said that on social media, you know, good for him. Not good for him that I endorsed the statement, but I mean, I just, people have to, you know, act like adults when it comes to is he fit to practice law. He's obviously fit to practice law. And so, no, statements like that are not subject to discipline. And if they were, I mean, that you'd have a super serious First Amendment and due process objection. And again, they haven't. I guarantee Ilya Shapiro is not the first person who said something he shouldn't have said. Amen. Wait for rebuttal. I think we're set. Thank you. We'll see you in rebuttal. May it please the court, Adam Shulman for appellee, Zachary Greenberg. And I have with me at counsel Mr. Greenberg and my co-counsel, Theodore Frank. Welcome. And please direct me where you think I can be most helpful. Could you clarify whether the complaint filed in the district court did mention as-applied challenge? It did. It wasn't dealt with by the court. That's right. JA 184 is the amended complaint raising the as-applied challenge. If you could start with standing, that would be helpful. Absolutely. And I think what you're hearing from the other side is that they're asking this court to roll back this court's line of cases from DeJohn, from Sachs, from McCauley, and instead apply the Fourth Circuit's in Abbott, which is an outlier in itself in other circuits, right? You've got the Fifth Circuit's Fenves. You've got the Eleventh Circuit's Cartwright decision. These cases all stand for the proposition that if you're objectively reasonably chilled, which the district court found on the undisputed record, you've made that point four or five times. The test is what? The Driehaus test from 2014? Supreme Court? Yes. So pre-enforcement challenges have essentially two things that have to be met. It's arguably prescribed by the rule, and the speaker faces a credible threat of prosecution. Based on what we have currently before us, I have great difficulty thinking that there's any threat of prosecution in light of the declaration of Mr. Farrell or anything else that I've seen here. If you look at it from the bigger perspective, that declaration was filed during the middle of the suit. That was filed after Pennsylvania lost the preliminary injunction stage, after they amended the rule, after we filed the amended complaint. At the time that we – at the inception of the case, there was a stipulated fact, docket 21, that nobody within ODC or any of the board members – that's Office of Disciplinary Counsel – has taken a position on whether my client's speech violated 8.4G or not. That's a stipulated fact at the outset of the case. Now, they want to, you know, retcon essentially from a declaration that occurred mid-suit. That's – there's no case that supports that. But let's go back even further, and let's take a look at what he actually put into the complaint. He says that if he has a detailed summation of the law in a particular area, such as the Mattel case or Snyder v. Phelps or Papish or Dambrot or Dambrow, two, if he believes opposing hate speech bans and regulations is a controversial position that some people might view as manifesting some hostility, he believes that supporting due process protection for students accused of sexual misconduct is a very controversial position, and he might make that in a CLE – a comment in a CLE program or, even worse, on a college campus. Both together. But where – if one is talking about the cases that exist and is making commentary, perhaps, on those cases, what is so incendiary at this point based on the complaint? Right. Not necessarily on what somebody else may say later on. And I don't see anything that would be incendiary at all. Well, there are certain examples – I think it's within 158 to 162 – of just verbalization of the epithets that are in those cases were enough to register complaints and incur discipline in certain cases. Professors did that in an academic setting, which is what CLE is under the Pennsylvania Rules of Continuing Legal Education. CLEs are an academic venue, courses of practical and intellectual content. That are required, right? They are required, and that argument would prove too much because under that authority, it's also required to be an attorney to graduate from an accredited law school. So is the defendant saying that it has the power to impose viewpoint discriminatory rules in a university classroom? They would be if that's the criteria. And I would point – and this was in the briefs below. I apologize if it wasn't clear enough in this brief. But in the Mital case, it dealt with specifically the issue of the defendant's – so that case dealt with the trademark non-disparagement clause in trademark law. And the defendant was making an argument that talking generally – the case involved a band that used the name Slants. And the defendant's argument was that that doesn't disparage any persons. That's talking about a group. And the Supreme Court rejected that very explicitly. It's 1756. I want to read just a sentence from that. A mark that disparages a substantial percentage of the members of a racial or ethnic group necessarily disparages many persons, namely members of that group. Tam's argument would fail even if the clause used the singular person, which is exactly what Pennsylvania's 8.4G, the definition of harassment, does. Can I ask you to roll back to just the Farrell Declaration? You're making – you made – one of your arguments was more procedural, that it shouldn't be considered at all. If we do consider it, how should we consider it? As a matter of mootness, just as the district court suggested. As a change – mid-suit litigation change of posture. If we consider it – hold on. If we consider it on the merits. So if you consider it on the merits, you mean the narrowing constructions that could be offered? Well, I mean, what he said. You know, there's no conduct that would violate the rule. We're not going to prosecute this. Right. And it's nonbinding, as your honors have noted. This is – it's a litigation position, right? It's the – we asked them, and it's in – I think it's around 290, their discovery responses. We asked them, what process do you have for revising that? There is no set process for revising it. Well, in our Stretton case that you cite, it's a 1991 case. It was not a standing case, but we similarly had a disciplinary chair like Farrell saying, we won't prosecute this, and we accepted it. I mean, shouldn't we do that here, assuming that we get through the procedural hurdle? Well, I'm not clear as to all the particulars. Here we've sued 13 defendants. One of them has made a statement. The others – Well, he's a pretty important one, right? We would acknowledge that. But there was briefing below, and I think the defendants put it into the – He's like the trigger guy that brings the complaint. Right, but there are – the board members have the power and the duty to assess violations, even if the ODC dismisses them, and we won that argument. They didn't raise it on appeal. They forfeited that point. But when you look at, in addition to what his declaration says, that seven out of eight complaints are discarded pretty much at the get-go, it looks like you've got an office of disciplinary counsel that is doing its job in a way that doesn't portend any type of harm coming to Mr. Greenberg based on what he has alleged in his complaint. So there's no detail on those complaints, right? Are those complaints from reputable complainants, like the examples that we provided in the complaint, reputable groups, reputable individuals, professors, complaining about harassment from speech of the sort that my client wishes to engage in? Let me put it another way. Clapper says that a subjective chill or a speculative fear isn't enough. What in the complaint goes beyond subjective chill? So there's a few things. There are several people that have approached my client to tell him that his specific presentations were offensive and hostile toward them after CLEs, and two of them admittedly were non-CLE speeches but similar types of audiences. Combined with the tens of examples of attorneys, legal speakers, judges speaking at events who were visited with complaints for taking absolutist First Amendment positions. We put in record evidence, and this is on the docket, that nearly half, it was a survey from the Cato Institute, half of the people surveyed thought that defending the right to engage in racist speech was as bad as the racist speech itself. I think, you know, I think that that's enough of a showing that there's an objectively reasonable chilling effect. Even in the cases, and I don't know that they contested this really, but the district court found that there was an objectively reasonable chill from the admitted process that they go through, even receiving a complaint that would be dismissed because they reach out to the attorney and ask them for certain things before that happens on occasion, and that's in the record as well. Your adversary pointed out that over 99 percent of the applications of this rule are going to be fine. Could you deal with that argument? Sure. A couple of things to say about that. First, it's a viewpoint discriminatory rule. They don't contest that. So under IANCU, you don't even need to get to the over-breath question. That means that all the applications are invalid because it's a viewpoint discriminatory rule, even if a viewpoint neutral rule could cover some of the applications, right, could be prescribed. So that's the first thing I'd say. The second thing is I think for the over-breath analysis, you don't add into the denominator things that are already prescribed based on current law. If that was the case, you could never have an over-breath challenge because they could just incorporate the corpus of law that exists at the time and add something no matter how flagrantly unconstitutional it is. So you look at what the marginal difference is. Here, that marginal difference is outside the practice of law. It's CLEs, bench bar conferences, bar association events. And I think that's the right way under SACS to conduct the over-breath analysis. You look at the limitation of the authority and compare the rule to whether it expands beyond that. And the analogy to SACS, they resist that very heavily. But under the Pennsylvania rules of CLE, you know, CLEs are courses of intellectual and practical content. That's why actual law school courses automatically qualify for credit. And viewpoint-based restrictions in that venue are no more compatible with the First Amendment than they were on college students like Macaulay or John or even secondary school students like SACS. Well, didn't your adversary cite a lot of law that attorney, First Amendment rights, you know, within the profession and practice are more limited than perhaps the attorney outside the profession? Well, absolutely. But what I heard from opposing counsel is that this law is regulating lawyer as lawyer. It's not regulating lawyer as practitioner of law. It's regulating the person, not the calling. And so NIFLA sets the boundaries, right, that there's two. Generally speaking, lawyers have equivalent rights except for the two exception categories when you're incidental to the practice of law. In all the statutes they cited, the 100 statutes, you know, 8.4G only goes back a few years, so it's not 30 years as they said. But all those statutes, as Judge Ambrose noted, can be distinguished. These are all in the course of a representation of a client in a legal proceeding  But if CLE is required by a state bar and some of these statements by Mr. Greenberg would be made in the context of a CLE or at a bar conference, why should they not be, in effect, related to the practice of law? Again, I would say that that argument would suggest that they then have the authority to impose a viewpoint-based rules in the context of a law school classroom. We think that's obviously wrong. That's why they resist it so fiercely in their brief, the analogy. But if that's the argument, the mandatory nature to become an attorney, you have to go to an accredited law school, at least for Pennsylvania attorneys. And we're not saying there's no jurisdiction to promulgate a rule that's actually speech neutral and content neutral. And, for example, some sort of an equal access rule to CLEs, that could certainly be viewed to a speaker who relegated Muslims to the back of the room. One of their examples obviously affects the opportunity of that attendee to participate in the CLE. We're in Pennsylvania, and we have a test that says there, among other things, has to be a credible threat of prosecution. Okay. In this case, with the declaration of Mr. Farrell, or Farrell, whichever, how is there a credible threat of prosecution in this case? So for a challenge to a newly enacted ruler statute, there's a presumption that there is a credible threat of enforcement. And that standing inquiry is done from the perspective of the outset of the case. What else would he have to say? What else would Pennsylvania have to do to say that we're not coming after Mr. Greenberg? Well, to moot it, you mean, or to deprive him of standing? I think it would be a question of mootness. The one. A question of mootness at this point. So we would need something more than an ad hoc opinion of one defendant that's a litigation position and non-binding. There would need to be something categorical about enforcement of the rule, which isn't in the Farrell declaration or his responses. Or an amendment to the rule that actually addressed the problems with it. For example, New York, and they say this in their reply brief, that the only difference is not apply to CLE. That's not true. That is not correct. New York also has two limiting principles written into its version. It says, one, it clarifies that conduct that a reasonable person would consider as petty slights or trivial inconveniences does not rise to the level of harassment under this rule. And, two, it explicitly states that views on matters of public concern in the context of teaching, public speeches, continuing legal education programs, or other forms of public advocacy or education are protected. So something like an amendment like that, we wouldn't be here today if that was how the rule was amended. But there's not a serious argument that the rule was actually amended to do a substantive change to what they had under the initial rule of manifest bias and prejudice. They simply removed the definition of harassment and inserted denigrate or show aversion or hostility, which actually brought it closer to the problematic statute of Matalvi-Tam, the non-disparagement clause. I wanted to say a few things from their reply brief, too. Oh, the germanness test. The germanness test is from, isn't a compelled speech case, and it's not a private speech restriction. It's from the Keller line of bar dues government established. So this would be a much harder case if it was about the courses that Pennsylvania was establishing in CLEs, not the private speech of attorneys at CLEs. They only say, the dispositive case is Nicola v. Becerra, which they only cite three times, very, very cursorily. And the reason they do that is that the germanness test is utterly incompatible with what Nicola said. Nicola wouldn't have said, if that were the test, Nicola couldn't have said that there was a requirement to preserve an uninhibited marketplace of ideas in which professionals can freely air a host of good faith disagreements on many topics in their respective fields. So that can't be the test for this type of speech restriction. I'd like to ask a question about the Farrell declaration as well. The Supreme Court on a number of occasions in cases like this have said, have cited the fact that there was no declaration of non-prosecution, and this affected their view on standing. Why shouldn't we look at it in the same way that the Supreme Court has and give more weight to the Farrell declaration than you think is appropriate? This wasn't a promise of non-prosecution categorically, number one. What the Supreme Court has said, so they did mention that as one factor in SBA lists when they're talking about standing,  that sort of mid-suit disavowal is looked at as a question of mootness, where there's a heavy, even formidable, the quote from this case is, heavy, even formidable burden on the defendants to show mootness. That's from DeJohn, I believe. And so the district court correctly analyzed it as a matter of mootness. It did go back and reassess, confirm its conclusion on standing, but the Farrell declaration, as a mid-suit development, is properly analyzed as a matter of mootness and not standing. Again, the standing, there was a stipulated fact at the time of the inception of the case that there was no opinion from ODC on whether my client's speech would violate or not P.4G. And without such an opinion, then the presumption of a credible threat is in full effect. And so a good case to look at, and it's out of circuit, the Fenves case from the Fifth Circuit, you had sort of a declaration submitted by an enforcement officer saying, we respect the First Amendment rights of speakers, and it did not prevent them from reaching the merits there, obviously. And so that's what I would, if you're thinking of other cases besides SBA lists, I'm happy to address them. But I think that's the one that you might be referring to from the Supreme Court on that. Okay. Thank you, counsel. We'll hear rebuttal. Thank you. So you are correct on 179, paragraph 134. There is the statement about, as applied to CLEs, but the request for relief on JA 81 says, please facially strike the rule in toto. So the relief requested was a complete invalidation of the rule, which is what he got. On sort of standing, the only thing I heard him say was verbal epithets can be very offensive, and he then said slants. He didn't seem too chilled in saying that. I just said it. I wasn't chilled. It's hard to see how, if this is, that's what Mr. Greenberg wants to do is say those kinds of things. It would be one thing if the Farrell Declaration said, oh, yeah, that arguably violates the rule, which he doesn't even allege. And, yeah, you could go it both ways, but don't worry, we won't prosecute. But this is a statement that reflects common sense, that listener reaction is not what's controlling, it's knowing. The ABA has issued a formal opinion on it, and he doesn't even argue that this is some sort of knowing or arguably knowing. The notion that he could be disciplined after I've stood up in a federal court in the Third Circuit, I can't even imagine what a court would do if they changed their mind and said, oh, Mr. Greenberg, sorry, that statement to slant was really offensive and we're going to discipline you. What would be an example of something that you believe would clearly be harassment or discrimination in connection with a CLE program? Oh, the examples we gave in the brief. I mean, you've got to put some stuff up on the wall and be pretty, you know, and certainly the back of the room. Discrimination is much easier. I mean, those examples in our brief, those are examples that happen in an office setting, that happen, and I don't understand the CLE. I've delivered CLEs. It's not that much different than doing a deposition or witness interview. You go to a building. You present on the Supreme Court or whatever you present on. People ask questions. Nice to meet you. Goodbye. I don't understand that's any different than talking to a court reporter or having a witness interview. You know, lawyers have to get out and interact with people every day, and I think in their view, once the – I don't even understand this view about it has the sharp client representation because, you know, once the will is executed, then you can harass. So I – What would be an example of a matter of policy stated as CLE program that you would find to violate 8.4G? Zero. There's no class. You mean if you – you'd have to – Basically, you're saying that the New Hampshire rule was implied in Pennsylvania anyway. Yes, absolutely, and it's in – it's required by the First Amendment because of – because of the germaneness test and swear, which is a due process case to be sure, but it is a case saying ideological has nothing to do with fitness to practice law. So your views about, you know, communism or whatever, abortion, race, that kind of thing, affirmative action, pronouns, all that kind of stuff, it's different if there's harassment. And, again, attorney's got to have ample notice before he's disciplined, and you can bring always an as-applied challenge. But the fact that there's never been an example of an attorney disciplined when we've had cancel culture for more than just last month, there's just never been an example of a bar overreaching. So the notion that the court would strike as facially invalid seems a little extreme. Can I ask you to address your adversary's argument about the Farrell Declaration? I mean, they say that there's a procedural problem that should not be considered at all because there was a stipulation about there would be no opinion. Can you address that? Yeah, I don't think that – I mean, I thought we addressed that in that reply brief. I don't understand that. I thought the stipulation was something else and it was on the old rule, so I'm not sure. But I thought our reply brief addressed it, but I remember his procedural objection being silly. But if you don't want to consider it, that's fine, but then I would just rely on the fact that the rule requires knowing. It's unlike your rule, which says reasonably interpreted. There's all kinds of rules that look more related to the listener objection. This rule doesn't. It requires knowing and intentional conduct with respect to a person. Again, the Farrell Declaration to me is confirmatory of the ABA and what would be required by due process in the First Amendment anyway and the germaneness test. On germaneness, which he didn't like in terms of extending beyond, we're not relying on the fact that CLE is mandatory. It's just ironic that you would say that's a free-for-all where you can abuse people when it's mandatory. But that has nothing to do with it. It has to do with the fact that you're learning how to practice law. It's important for the integrity of the legal profession. But the McDonald case by the Fifth Circuit, that whole opinion goes very, very carefully through how strict scrutiny applies. But in the legal profession, you satisfy strict scrutiny when it's tied to improving the quality of legal services and regulating the legal profession. If we do get to the merits in this case, is the not substantially overbroad for a facial challenge, is that the way to decide this issue? Yes. I mean, the vagueness is written as you have, you know, it all has to be all its applications, which seems kind of extreme. But the, and I know the Supreme Court just had the Hansen case, but it has to be a substantial with respect to its legitimate sweep. His answer on why you would include the only, the new stuff was somewhat incoherent. There is no current rule that bans harassment discrimination outside of pending proceeding. So, but I know of no case law that says you look at the new rule's scope or zone of impact, and I mean, that was gobbledygook. There's millions of Supreme Court cases on what a facial overbreath is. And when you say it requires strict scrutiny, but the government satisfies strict scrutiny